Let's go to our first case. This is R.N Nehushtan Trust Ltd. v. Apple Inc. Case 24-1806. Mr. North? Yes, sir. Are you ready? Yes, sir. And you reserve three minutes of your time for rebuttal. Is that correct? Three minutes, sir. Okay. Before we start, there's been confidential – there's confidential information cited in your brief. In both parties' briefs. In both briefs. Okay. So I don't think that we're – it's limited in nature and I don't – we may not be addressing it, but if you see us headed off into that particular area, raise and wave your hand or something so we can take the appropriate action. Otherwise, if you don't need to refer to it, then I suggest that you do not. I will do my best not to, Your Honor, and then I'll ask counsel, because it's Apple appellee's information that is confidential, so I'll try to pause and then if appellee's has an issue, I'll know that she'll let me know. So thank you for that. Okay. You may proceed. Good. Good morning, Your Honors. My name is John North and I'm pleased to represent the Appellant R.N. Nehuston Trust here today. R.N. Nehuston Trust is a family trust that involves the inventor of the patent set issue, Rafi Nehuston. We respectfully request that this honorable court reverse the judgment of the district court and remand for further proceedings. That judgment was based on the grant of summary judgment based on three issues presented by appellee to the district court. Counsel, in its summary judgment order, the district court concluded, and I'm quoting, R.N. N. Trust cannot point to any other language in the asserted claim that suggests something other than, I'll paraphrase, the device unique security setting, triggers the access restrictor and allows a device to enter data mode. So can you point me to any other language in the asserted claims that suggests something other than the device unique security setting allows a device to enter data mode? Yes. So that language for this first issue needs to be read in the context of the phrase as a whole, which begins with, also comprises, that is, the cellular device also comprises an access restrictor restricting the use of the data mode in accordance with the device unique security setting, which we call the deuce. Appellee and the district court thought that that meant, that phrase meant, that the device unique security setting alone or by itself must be the one that grants access to it or triggers it, as I think the district court said in part. Well, you take issue, in the appeal, you take issue with the district court's construction of device unique security setting and also provided by a cellular provider, but ultimately you agreed to those constructions before the district court. If you had that issue with those constructions, why didn't you appeal them? Because we believe that those constructions were appropriate and our expert, Dr. Cole, who the court credited and whose credentials were not challenged, he has a PhD including in cyber security, gave his opinions based on a plain reading of what those constructions meant. He ultimately agreed with a lot the other side had to say. In certain aspects he did, and I can explain why that doesn't make any difference here today. But we agreed because at the time, and we still do, and Dr. Cole believed that there is infringement or at least a genuine issue of material fact based on the plain constructions and that instead, as per this court's decision in Duncan, there was a reinterpretation or a narrowing during the summary judgment process, and it was that narrowing, not the initial constructions that we're concerned about and that we're raising on this appeal. So we're not challenging the initial constructions. We think we accepted them, which is a phrase in district courts when there are tentative decisions, which is saying, and we don't need to quibble between agreeing and accepting, but we thought that they were fair and that we had a good infringement argument under the plain, ordinary reading of those constructions. So you agree that the device unique security system is a setting that grants access to the data mode because that's the construction? We agree with that construction, but we don't agree with the narrowing of it, where— Narrowing? The district court found that the portions of the Apple whatever that you pointed to don't access, don't grant access to a data mode. Read in the— And that's true. Right? There's two things. I don't know if they're confidential or not, so I'm not going to talk about them. We know what we're talking about. There's two things, and it's undisputed that those two things do not grant access to a data mode in the Apple devices. Is it not? They do not alone grant access, Your Honor. And that's the debate— So they're not a DUS? Well, they do grant access because without the— The theory of the case was these two. It wasn't these 11 are the DUS, and therefore that infringes our patent. Your theory of the case—and it might have been different if your theory of the case had been different, but those two things don't grant access, right? And a DUS has to grant access. So by definition, they are not a DUS. They may be part of a larger DUS, but that's not what you pointed to in your theory of the case. So you're out on summary judgment. What's wrong with that? Because we argued in our theory was that they were necessary but not sufficient alone. And they are necessary— That doesn't meet the claim construction. Because at granting access— You agreed to this claim construction. You have multiple problems with your case. One is you agreed to a claim construction that says the DUS itself grants access. And then you pointed to two items and said, these are the DUS. Well, those two items can't be the DUS in Apple because they don't by themselves grant access. There may be a DUS in Apple, but it's more than just these two. We believe, Your Honor, that a person of skill reading the patent would understand that it is not granting access. It is something that is necessary, like an access card to get into a building, but you still need to show security and ID. And that if you look to column seven of the patent, and that's the 002, which I referenced, that's one of the two patents, there's an express disclosure of three additional potential steps that would be necessary in order to access— Are those three potential steps part of the DUS? They are. It's a comprising claim. It says also comprises. I'm sorry, you're stuck with your claim construction. Most of what you seem to argue in your blue brief and what you're arguing now goes beyond what the claim construction was agreed to. And if the DUS itself, whatever you identify as the DUS, has to grant access without reference to anything else, and that's how I read the claim construction, then unless what you've identified grants access, then you're out. All this other stuff about, well, you might need to do these steps too, that's not what your claim construction is. Respectfully, Your Honor, I don't—if the words alone or by itself were inserted in the— It doesn't need to be alone. It's a setting that includes, and it has some language about one secure item or whatever, it's a setting that grants access. It's not a setting—it's not something that says a setting in combination with other things grants access. It's a setting that grants access. And we believe when that is read properly in context with the lead-in that you have an access restrictor which restricts access or not to the data mode and when you— The two items that you identified in the Apple device grant access. They do not alone grant access. And that comes to the nub of what we had. And I think in the Duncan opinion, there was a claim construction. Does this issue, if we disagree with you resolve this case, we have to reach the other issues? It goes across all of the claims. So the answer is yes, if you disagree with us on it, there's no need to reach the other issues on that. I think, though, the Duncan case is instructive and we cited it in the blue brief and that was the same situation where summary judgment was granted based on the construction. And then this court came back and said that there was an improper insertion that summary judgment of the word entirely into the construction. And this court reversed and remanded on that basis. And we believe that the same situation applies here, that in effect to get where the district court and where the appellee goes, you have to read that claim construction to say the deuce alone does it. And in the context of the access restrictor and also the disclosure in column seven of additional protections and also referring to hashing and encryption, that this is just an enhancement of the security that was available at the time. And the background shows that this enhancement was because the passwords at the time were generated by the manufacturer and were across a whole range of devices. And so if you hacked one, you got them all for that class. And so this improvement was to say, well, we're going to have something so that this password is unique to the device. And so even if you hack it, then you're not going to get into all of the other devices out there. And the deuce is necessary, and so it performs that function. The deuce, in fact, provides that enhancement that was part of the invention. And the invention never claimed that it was the only thing that would grant access. And there's nowhere in the specification where it's said to be the sole thing that grants access. An appellee cannot point to that. So respectfully, sir, we believe a reasonable reading of the specification, as we know we must do by Phillips, is that one would understand and one would accept that construction because it does grant access under a plain and ordinary interpretation of that. Let me just see if I have anything else on that point, if I might, Mayor. You're pretty close to your rebuttal time. If you want to reserve the remainder of your time, you can. I will do that. Thank you. Okay. Thank you, sir. Counselor Ahmadi? Thank you, Your Honor. May it please the Court, my name is Brittany Ahmadi and I represent Apple. There's no dispute over how the accused Apple devices operate in this case. The only question before this Court is whether the claims as construed in the instructions applied to Apple's products find no infringement here. There are two separate paths to affirmance by this Court. First, if the Court determines that the district court correctly found that Apple's products do not have a device-unique security setting that grants access to the data mode, then this Court can affirm on all asserted claims on that basis. And second, if this Court concludes that the data mode in Apple's products is not in an active connection and the operating system updates are not provided by a cellular provider, this Court can also affirm on that basis as well. Do we need to determine that there's no dust in Apple's devices at all, or just that the two things they identified as the dust don't grant access? Just the latter, Your Honor. Just that the two properties that they identified do not grant access. I mean, there's something in Apple's devices, it may not be called a dust or something like that, that grant access to a data mode because you have to update the same way everybody, not the same way, but you have to update something. But their theory of the case was these two specific things, and the district court found under the claim construction that those aren't a dust. That's correct, Your Honor. And there's no issue of fact that those two things don't grant access. That's all we need to decide, right? That's exactly right, Your Honor. Those two properties are the only things that issue before this Court, and those two properties as undisputed do not grant access to the operating system update and the accused Apple products here. And that is sufficient for this Court to affirm on all asserted claims. I presume that your second argument, the cellular argument, is strongly related to your assertion, and I don't think this is confidential, that the phone actually turns itself off at a point. That's correct, Your Honor. On the active connection issue, there's no dispute that the operating system update is loaded when the device is completely disconnected from the network. The exact opposite of what the claims describe, as well as what's described as the alleged invention and the specification. You agree we don't have to get there, though? That's correct, Your Honor. If this Court affirms on the first ground, there's no need to reach the second ground. I'd just like to address a couple of points with respect to the first ground. The claim construction was undisputed here. It's actually the portion of the construction that they're taking issue with now, the grants access, was proposed by RNN Trust before the District Court. And having proposed that construction, they cannot now come on appeal and challenge that construction before this Court, as I believe my friend has acknowledged on the other side. This argument seems to be that the dust doesn't have to be the only thing that grants access. It just has to be one of the things that grants access. If that was the case, then would it make difference to the summary judgment ruling here? Here, the two properties that they identified do not grant access, period. There's no dispute that there are a number of different properties without getting into the confidential details that have to be verified. But then even on top of that, there are additional steps that have to take place before the operating system update can be loaded. And so there's no dispute that those two properties do not grant access to the data mode. So the problem with their case is what I suggested. It's twofold. One, they agreed to a claim construction that seems to require the dust itself to grant access. And two is, their theory of the case about what in Apple's products is a dust is just wrong. That's correct, Your Honor. Yes. And both of those spaces are sufficient to affirm here. If I could touch briefly on their other arguments with respect to the active connection. As I mentioned, again, the facts are undisputed here that Apple's accused devices are disconnected by design, the exact opposite of what the patent teaches. And that's another basis on which to affirm as to all asserted claims except for claim 528 and 29 of the 002 patent. And separately, as to the last issue that is raised in the opening brief, provided by a cellular provider. There's no dispute here that the operating system updates are supplied and provided by Apple and not by a cellular provider. Again, the exact opposite of what is described and claimed in the asserted patents. And that is a construction that R&N Trust consented to before the district court during district court proceedings. And so for all of those reasons, we would ask that the court affirm as to all asserted claims the grant of summary judgment of non-infringement. Thank you, Your Honor. In response to Justice Hughes, I read in the papers. I'm sorry. Actually, don't, thanks. But I believe the evidence shows that we identified as the deuce what's called an ECID, an exclusive chip ID in the knots, which keeps it, changes it over and over again, which keeps it from a repeat. And I think that was public and that was in our complaint. And I think there are different names to it. But if you agreed that all of that is necessary is for the deuce to have to be necessary for the process, then we have identified that. And that's what the confidential evidence shows on that. So I don't know if that was clear, but I just wanted to make, and it may not make a difference for the panel, but that is the evidence. They do have these functions and they are a necessary part of what goes on. And in fact, in their public documents, they are highlighted as part of their security scheme. And that's listed in the complaint. So this isn't a minor one of the number of factors is under the protective order. And so I won't mention how many, but it's a very primary important thing. And then on the second point, relating to the active connection in the data mode, it's in the papers, and I won't prolong this, but if the court looks at it, that the data mode, the construction that is agreed to doesn't include any active connection requirement at all, that there are claims before this court that don't even mention, excuse me, don't mention even an operating system, and they try to limit it to the operating system, the small segment in time, and say it's turned off, and therefore there's no infringement. But as you would read in Dr. Cole's report, the data mode is a broader thing, and we have actual proof of infringement during that period. Finally, as to the third term, just briefly, we believe that the claims fairly read say that the cellular provider needs to supply, just like in a supply chain, that doesn't mean you created it. And here we have evidence that the cellular provider does in fact supply the OS updates. Did you make that argument below? Yes. We pointed to figures two through four to support that notion, that they're not looking at who created it, and that was the insertion. Thank you, your honors, I appreciate your time today. Thank you.